# EXHIBIT A

Attorney *in fact*:
Richard M. Zelma, *pro se*
940 Blanch Avenue
Norwood, New Jersey 07648

Tel: 201 767 8153
Attorney for *SELF*

SUPERIOR COURT OF NEW JERSEY
BERGEN COUNTY

## LAW DIVISION

Richard M. Zelma / Nicole Zelma
Plaintiffs

vs.

Patrick Burke, individually; Bruce Burke, individually; and
Patrick Burke, as CEO of Computer Telephony Innovations Inc.;
Bruce Burke as Chairman & Senior Officer of Computer Telephone
Innovations Inc.; and Computer Telephone Innovations Inc., d/b/a
VoxTeleSys.com

Docket No.: **BER-L-2795-16**

CIVIL ACTION

Defendant(s)

# SUMMONS

## From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint (you) or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within **20 days** from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of those numbers is also provided.

7012 3460 0002 5019 2459

Michelle M. Smith
Clerk of the Superior Court

DATED: April 6, 2016
SERVE ALL at 1723 North Walnut Street, Wahoo NE 68066
No registered agent listed for the parties at the NE Secretary of State

Pursuant to R. 4:4-4(b)(1)(C); Service by First Class Mail and Certified Mail R.R.R.

Revised 09/01/2010, CN 10792-English (Appendix XII-A)



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),**
if information above the black bar is not completed
or attorney's signature is not affixed

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| 1. ATTORNEY / PRO SE NAME | 2. TELEPHONE NUMBER | 3. COUNTY OF VENUE |
|---|---|---|
| Richard M. Zelma /N icole Zelma | (201) 767-8153 | Bergen |

| 4. FIRM NAME (if applicable) | 5. DOCKET NUMBER (when available) |
|---|---|
| N/A | BER-L-2795-16 |

| 6. OFFICE ADDRESS | | 7. DOCUMENT TYPE |
|---|---|---|
| 940 Bianch Avenue | 114 Fleetwood Road | Complaint |
| Norwood NJ 07648 | Dumont, NJ 07628 | |
| | | 8. JURY DEMAND ☐ YES ■ NO |

| 9. NAME OF PARTY (e.g., John Doe, Plaintiff) | 10. CAPTION |
|---|---|
| Richard Zelma & Nicole Zelma | Richard Zelma & Nicole Zelma vs. Patrick Burke, Bruce Burke and Computer Telephony Innovations, Inc a/k/a, d/b/a VoxTeleSys.com. |

| 11. CASE TYPE NUMBER (See reverse side for listing) | 12. HURRICANE SANDY RELATED? | 13. IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ■ NO |
|---|---|---|
| 699 | ☐ YES ■ NO | IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT |

| 14. RELATED CASES PENDING? | 15. IF YES, LIST DOCKET NUMBERS |
|---|---|
| ☐ Yes ■ No | |

| 16. DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? | 17. NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) |
|---|---|
| ☐ Yes ■ No | ☐ NONE ■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| 18. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? | IF YES, IS THAT RELATIONSHIP: | | |
|---|---|---|---|
| ☐ YES ■ No | ☐ EMPLOYER/EMPLOYEE ☐ FAMILIAL | ☐ FRIEND/NEIGHBOR ☐ BUSINESS | ☐ OTHER (explain) |

19. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☐ YES ■ NO

20. USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| ♿ | 21. DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | ☐ YES ■ No | |
| | 22. WILL AN INTERPRETER BE NEEDED? | IF YES, FOR WHAT LANGUAGE? |
| | ☐ YES ■ No | |

23. I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

| 24. ATTORNEY SIGNATURE: | |
|---|---|



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
151 NAME CHANGE
175 FORFEITURE
302 TENANCY
399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502 BOOK ACCOUNT (debt collection matters only)
505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
506 PIP COVERAGE
510 UM or UIM CLAIM (coverage issues only)
511 ACTION ON NEGOTIABLE INSTRUMENT
512 LEMON LAW
801 SUMMARY ACTION
802 OPEN PUBLIC RECORDS ACT (summary action)
999 OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
305 CONSTRUCTION
509 EMPLOYMENT (other than CEPA or LAD)
599 CONTRACT/COMMERCIAL TRANSACTION
603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605 PERSONAL INJURY
610 AUTO NEGLIGENCE – PROPERTY DAMAGE
621 UM or UIM CLAIM (includes bodily injury)
699 TORT – OTHER

### Track III - 450 days' discovery
005 CIVIL RIGHTS
301 CONDEMNATION
602 ASSAULT AND BATTERY
604 MEDICAL MALPRACTICE
606 PRODUCT LIABILITY
607 PROFESSIONAL MALPRACTICE
608 TOXIC TORT
609 DEFAMATION
616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617 INVERSE CONDEMNATION
618 LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303 MT. LAUREL
508 COMPLEX COMMERCIAL
513 COMPLEX CONSTRUCTION
514 INSURANCE FRAUD
620 FALSE CLAIMS ACT
701 ACTIONS IN LIEU OF PREROGATIVE WRITS

### Multicounty Litigation (Track IV)
271 ACCUTANE/ISOTRETINOIN
274 RISPERDAL/SEROQUEL/ZYPREXA
278 ZOMETA/AREDIA
279 GADOLINIUM
281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
282 FOSAMAX
285 STRYKER TRIDENT HIP IMPLANTS
286 LEVAQUIN
287 YAZ/YASMIN/OCELLA
288 PRUDENTIAL TORT LITIGATION
289 REGLAN

290 POMPTON LAKES ENVIRONMENTAL LITIGATION
291 PELVIC MESH/GYNECARE
292 PELVIC MESH/BARD
293 DEPUY ASR HIP IMPLANT LITIGATION
295 ALLODERM REGENERATIVE TISSUE MATRIX
296 STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS
297 MIRENA CONTRACEPTIVE DEVICE
299 OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR
300 TALC-BASED BODY POWDERS
601 ASBESTOS
623 PROPECIA

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category**  ☐ **Putative Class Action**  ☐ **Title 59**

BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK        NJ 07601-7680

COURT TELEPHONE NO. (201) 527-2600
COURT HOURS  8:30 AM - 4:30 PM

TRACK ASSIGNMENT NOTICE

DATE:    APRIL 05, 2016
RE:      ZELMA VS BURKE
DOCKET: BER L -002795 16

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON LISA PEREZ-FRISCIA

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM       003
AT:  (201) 527-2600.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.

ATTENTION:

NICOLE ZELMA
540 ELANCH AVENUE
NORWOOD        NJ 07648

JUBCOE0

RICHARD M. ZELMA
Richard M. Zelma, *Pro Se*
940 Blanch Avenue
Norwood, New Jersey 07648
TCPALAW@optonline.net
Tel: 201 767 8153

SUPERIOR COURT BERGEN COUNT
FILED

APR 0 1 2016

DEPUTY CLERK

| | |
|---|---|
| Richard M. Zelma and Nicole Zelma Plaintiffs' Vs. Patrick Burke, individually and Bruce Burke, Individually and Patrick Burke as Chief Executive Officer of Computer Telephony Innovations, Inc and Bruce Burke as Chairman and Senior Officer of Computer Telephony Innovations, Inc and Computer Telephony Innovations, Inc a/k/a, d/b/a VoxTeleSys.com and Does' (1-5) and ABC Corporations' (1-5); each acting individually, in concert or as a group. Defendants' | **SUPERIOR COURT OF NEW JERSEY** **BERGEN COUNTY** **LAW DIVISION** DOCKET NO.: BER-L- 2795-16 **Civil Action** **COMPLAINT FOR STRICT LIABILITY STATUTORY DAMAGES; TREBLED DAMAGES, and PERMANENT INJUNCTIVE RELIEF** |

## I. INTRODUCTION

1.    Plaintiff, Richard M. Zelma; Plaintiff Nicole Zelma, by way of Complaint as against Defendants says as follows:

2.    This suit is brought pursuant to applicable authorities; 47 U.S.C. §227 (b)(3), (c)(5); N.J.S.A. §56:8-119 and N.J.S.A. §§56:8-121(a)(&(b), which prohibit the initiation of unsolicited marketing calls, made by

telephone, either live or prerecorded, whether or not conversation ensues and initiated through the use of an Automated Dialing and Announcement Device (ADAD) or Automatic Telephone Dialing System (ATDS). As set forth herein, the Defendants repeated calls, made to Plaintiffs' homes, caused undue harassment, violated the peace and solitude of their homes and violated both federal and state no-call laws.

## II. PARTIES

3. Richard M. Zelma (hereinafter, "RZ", "Plaintiff" or "Zelma"), is a natural person and senior citizen, residing at 940 Blanch Avenue, in the Borough of Norwood, Bergen County New Jersey 07648.

4. Nicole Zelma, (hereinafter, "NZ", "Plaintiff" or "Nicole Zelma") is married to the son of Plaintiff RZ and resides with their two sons at 114 Fleetwood Road, Dumont, Bergen County, New Jersey.

## III. DEFENDANTS

5. Upon information and belief, Defendant Patrick and Bruce Burke (hereinafter "Burke", "the Burke's" or "defendants") own and operate Computer Telephony Innovations, Inc, making the day to day decisions for their company. Plaintiffs' sue the Burke's individually.

6. Computer Telephony Innovations, Inc. (hereinafter "CTI" or "Defendant") is a corporation organized and

existing under the laws of the state of Nebraska having its principal place of business believed to be located at 1723 N. Walnut Street Wahoo, NE 68066.

7. Upon Plaintiffs information, understanding and belief, the Doe Defendants, believed to be Americas Choice Construction and All American Chimney & Duct Cleaning, a name provided in each prerecorded call, cannot be located or confirmed.

8. Plaintiff made several diligent inquires with Defendant Bruce Burke to provide more specific information on his client, but regretfully Burke refused to do so

9. Whenever and wherever it is herein alleged that the Defendants, either individually, in concert or as a group, did any act defined or described in the within matter, it is meant the Defendants performed, caused to be performed and/or participated in the act, and/or that Defendants officers, employees, contractors, assigns, successors, predecessors, affiliates, or other agent(s) performed or participated in those acts on behalf of, for the benefit of, and/or under the authority of the Defendants.

## IV. JURISDICTION AND VENUE

10. The facts giving rise to this complaint had their primary effects in the State of New Jersey, County of

Bergen. This Court has specific jurisdiction over the Defendants under authority of <u>N.J.S.A.</u> §56:8-119 as Defendants were strictly prohibited from soliciting Plaintiffs as New Jersey residents and the controlling jurisdiction in which the violations occurred.

11.    This court has general jurisdiction under 47 <u>U.S.C.</u> §227(b)(3) & (c)(5) where the Defendant engaged in substantial, continuous and systematic activities, repeatedly initiating unwanted auto-dialed calls into New Jersey and within this County, to Plaintiffs, whose phone numbers are registered on the Federal and States no-call list since inception.

12.    As further set out below, the defendants' and each of them purposely directed their activities towards Plaintiffs, deliberately, in a continually harassing manner, alarming and annoying their households for their own financial gain.

## V.  COMMONALITY / JOINDER

13.    Plaintiff and his daughter-in-law collectively bring this action as the right to relief asserted by both plaintiffs against the defendants, arise out of the same occurrence or occurrences and involve a question of law or fact common to both.  (Rule 4:29. Joinder of Multiple Parties; 4:29-1(a). Permissive Joinder, Joinder by Parties)

## VI.  ACTS OF AGENTS

4

14. At all times alleged herein, each and every defendant was an agent, representative and/or employee of each and every other defendant. In doing or failing to do the acts stated herein, each and every defendant was acting within the course and scope of agency, authority, representation or employment and was acting with the consent, permission and authorization of each defendant including the DOE defendant's. All actions of each defendant as alleged and stated herein were ratified and approved by every other defendant or their respective officers, managing agents, owners, directors or corporate principals.

## VII. DEFENDANT CTI's BUSINESS PRACTICES AND UNLAWFUL ACTS

15. Defendant CTI is a "re-seller" of telephone numbers which includes providing phone number subscription services, Caller Identification services, automated dialing with announcement and call routing, thereby allowing CTI to collect a fee and profit each time a call is made using its services.

16. CTI is also a Common Carrier, licensed by the FCC under filer No. 827574, permitting it to provide resale internet VoIP telephone service to others.

> In meeting FCC Common Carrier requirements, CTI must have procedures in place to comply with Section 64.2105; Creation and Filing of System Security and Integrity Manuals as required by the Communications and Law Enforcement Assistance Act (CALEA). CTI holds accounts for subscribers who sell products or services through telemarketing by using the services of CTI.

17. The US Patriots Act, Section 326 requires Banks and *others*' who hold account information on clients, to maintain and confirm such information is accurate. Its purpose is to provide anyone lawfully seeking subscriber information to provide such information with complete accuracy.

18. CTI has failed in that endeavor as they refuse, circumvent a request or in the alternative, have no proof anyone acting on their behalf; under their jurisdiction or authority other then the defendants themselves, placed or initiated the subject calls to Plaintiffs.

19. CTI maintains a website under the name 'www.VoxTeleSys.com'.

20. According to that website, CTI is (also) a Call Center. Therefore, CTI, among its other services, engages in "telemarketing", as those terms are defined in the TCPA and the New Jersey no-call-law.

21. In addition, the CTI website describes in relevant part, the use of Predictive Dialers for telemarketing purposes. (See website: SpitFire Integration; *et seq.*) [Exhibit-1]

22. The core services of CTI is to provide a 'platform' for its subscribers, enabling them to disseminate marketing calls to the fullest extent possible, allowing itself or its subscribers the ability to distribute telemarketing calls from one location with the added protection of hiding the callers true identity.

23. The FCC recently issued an Order in their Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; in the matter of Petition of Club Texting, Inc.; Declaratory Ruling; FCC DA 16-25; CG Docket No. 02-278,

Released: January 11, 2016, stating in relevant part; organizations (such as CTI) *"who provide a platform for callers, are liable for the unlawful calls as if they actually made the calls themselves"*. [EMPHASIS ADDED] [EXHIBIT-2]

24. CTI and its owners have either refused, are harboring or failed in the requirements to provide the true identity and actual abode of the entity named in the subject calls Plaintiff identified as their subscriber, Americas Choice Construction and All American Chimney & Duct Cleaning. It is therefore believed these entities do not exist and are merely a fabrication of CTI to hide its own prohibited calls.

25. SEC. 202. [47 U.S.C. 202] DISCRIMINATION AND PREFERENCES states in relevant part:

> It shall be unlawful for any common carrier: . . . to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, ...

26. The Burke Defendants used their services, initiated outbound telephone calls to both Plaintiffs homes, to induce the purchase of repair and maintenance services from the yet unidentified Doe defendants.

27. Ironically, the CTI website claims TCPA Compliance. However, its procedures, if they even exist, fall short of meeting regulatory compliance standards.

28. On December 11, 2015 Plaintiff Richard Zelma sent CTI's attorney a letter outlining the client's unlawful telemarketing practice. There was no response. [EXHIBIT - 3]

29. The CTI defendants control or have control over their system. The CTI defendants refused to terminate service for the

alleged Doe defendants. As a Common Carrier, which they are, the CTI defendants have and had an obligation to which they refused to exercise;

## 47 U.S.C. §206

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

30. Therefore Defendant CTI and its principals are liable for the violations addressed herein.

31. Upon Plaintiffs understanding and belief, Defendants' Americas Choice Construction and All American Chimney & Duct Cleaning are merely vaporous entities fabricated by the Burke's in one of several attempts to harvest names of homeowners possibly needing home repairs, thus establishing a means to shield themselves from liability. Such homeowner names could then be sold as referral lists to various and other contractors throughout the area for an additional income to the CTI defendants.

32. Defendant CTI engaged in this prohibited telemarketing to induce consumers to invest in remodeling or maintenance services for their home.

33. As part of its campaign to market these services, Defendants initiated outbound telemarketing calls to phone

8                                        DOCKET NO.: BER-L-002795-16

numbers on the Do Not Call Registry including those of both Plaintiffs.

34. Defendants do not have nor ever had any established business relationship with either Plaintiff.

35. The Defendants did not have either of Plaintiffs' express agreement, in writing, to receive telemarketing calls initiated to them through the use of an Automated Dialing and Announcement Device.

36. In numerous instances, the Defendants continued to call both Plaintiffs who had previously informed Defendants that they did not wish to receive additional calls by or on behalf of Defendants. Id. (See also exhibits)

37. In numerous instances, Defendants "spoofed" their calls by transmitting phony caller identification information so that the call recipients would not know the true source of the calls.

38. In numerous instances, the defendants Caller ID displayed numbers that did not allow either Plaintiff to call back during normal business hours and make a do-not-call-request.

## VIII. FACTS COMMON TO PLAINTIFF RICHARD ZELMA

39. Plaintiff RZ subscribes to phone numbers [201] 767 8153 and [321] 220 8922 for use as his residential land-lines.

40. Plaintiff RZ subscribes to phone number [201] 310 0851 as his cell phone.

9

41.    Both phone numbers referenced in ¶39 above have been
listed on the FTC and New Jersey no-call-registry since
inception.

42.    Plaintiff   RZ   has   no   established   or   existing
relationship with the defendants or either of them.

43.    Prior to the commencement of the within dispute,
Plaintiff RZ had never contacted the defendants or either
of them.

44.    Plaintiff received the unlawful calls at issue,
from, by or on behalf of the defendants, as follows:

> To: [321] 220 8922 – 11.29.2015, 9:09 AM
> From Tel: 201 639 3690 Name: N/A
>
> To: [201] 767 8153 – 02.12.2016, 09:05 AM
> From Tel: 201 639 3690 Name: Ridgewood

45.    On  March  23,  2016,  at  1:58  PM,  Defendant  CTI
intensified its efforts to either harass and/or solicit
Plaintiff RZ by initiating a prerecorded announcement to
plaintiffs cell phone [201 310 0851] from spoofed phone
number [201] 464 5207 in an attempt to sell an extended
auto warranty.

46.    Throughout these calls, the defendant used an
automatic dialing and announcement device as defined and
described above and solicited Plaintiff by initiating a
call to both his residential telephone lines as well as
his cell phone, with the possibility of additional calls

which will be sought through continuing discovery.

47.   The defendants do not have an internal no-call list as required by law.

48.   The defendant's employees are not trained in the use of a company specific no-call list as required by law.

49.   The defendant does not have procedures in place to "effectively" prohibit unwanted calls.

50.   The foregoing deficiencies caused the defendant to initiate repeated calls to plaintiff which evidence the absence of any "effective" no-call procedures.

## IX. FACTS RELEVANT TO PLAINTIFF NICOLE ZELMA

51.   Plaintiff Nicole Zelma subscribes to Verizon phone service for her land-line residential phone number; [201] 439 0563 which she's maintained for at least 15 years.

52.   Plaintiff NZ listed her families residential number [201] 439 0563 on the FTC and New Jersey no-call-registry since 2004.

53.   Plaintiff NZ does not have nor ever had any established or existing relationship with the defendants or either of them.

54.   Prior to the commencement of the within action, Plaintiff NZ had never contacted the defendants or either of them.

55.    Plaintiff NZ lists the unlawful calls received from
the Defendants as follows;

        8/31/15 - 8:10 PM;
        9/5/15  - 11:53 AM;
        9/12/15 - 11:01 AM;
        9/25/15 - 7:10 PM;
        10/8/15 - 9:29 AM;
        10/14/15 - 9:24 AM and
        10/31/15 - 9:08 AM.

56.    Throughout these calls, the defendant used an
automatic dialing and announcement device as defined and
described above and solicited Plaintiff by initiating
calls to their residential telephone line, with the
possibility of additional calls which will be sought
through continuing discovery.

57.    Evidenced by the repeated calls, the defendants do
not have an internal no-call list. Id.

58.    The defendant's employees are not trained in the
use of a company specific no-call list. Id.

59.    The defendants do not have procedures in place to
"effectively" prohibit unwanted calls. Id.

60.    The foregoing deficiencies caused the defendants to
initiate repeated calls to plaintiff which evidence the
absence of any "effective" no-call procedures.

## X. VIOLATIONS OF LAW COMMON TO BOTH PLAINTIFFS

61.    Each call received was in violation of plaintiff's
previous no-call request.

62.    Some calls cited above were prematurely abandoned,

absent the requisite 2 second greeting in each such call, requiring "the defendant's name, phone number and reason for the call[s]". [47 C.F.R. §§64.1200(a)(5)&(6)].

63. Each call received produced a local number on Plaintiffs caller ID of [201] 639 3690 or [201] 464 5207, which when dialed, failed to reach a live representative during normal business hours.

64. The defendants knowingly hid, blocked or deprogrammed the real phone numbers from which the calls initiated to purposely hide the true identity of its call-centers, thereby making it difficult if not impossible for Plaintiff or others receiving the defendant's uninvited calls to effectively stop them. Id.

65. The defendant's calls were purposely programmed not to transmit the true Caller ID name but only display "[201] 639 3690" or "[201] 464 5207" on Plaintiffs Caller ID,

66. At all times material to this Complaint, acting alone or in concert with others, the defendants and each of them had the authority and responsibility to prevent or correct the unlawful acts but knowingly failed to do so or willfully chose to do nothing.

67. The Defendants are therefore liable along with the currently unnamed Doe Defendants, under the terms of 47 U.S.C. §227(b)(3); (c)(5) and N.J.S.A. §56:8-119..

68.   The   Defendants   used   an   automated   dialing   and
announcement   device   (ADAD)   or   an   Automatic   Telephone
Dialing System (ATDS) to solicit Plaintiffs and did so in
violation of 47 USC §227(b)(1)(B).

69.   At all times relevant, the Defendants purposely,
willfully   or   knowingly   made   the   calls   at   issue   to
Plaintiffs; initiated or caused the initiation of those
calls   to   Plaintiffs;   and   delivered   said   calls   to
Plaintiffs, which were purely commercial in nature, to
benefit the Defendants' own financial gain.

70.   The Defendants failed to obtain Plaintiffs prior
written   express   consent   to   receive   their   auto-dialed
unsolicited calls.

71.   At all times relevant, the Defendants failed or
refused to register their intent to solicit into the
State with the New Jersey Division of Consumer Affairs.
[N.J.S.A. §§56:8-121(a)(&(b)]

## XI. THIS COURT'S POWER TO GRANT RELIEF

72.   47   U.S.C.   §227(b)(3)(A)   empowers   this   Court   to
grant injunctive and other ancillary relief to prevent
and remedy any future violation by the Defendants of any
provision of law enforced by the FCC that protects both
Plaintiffs.

73.   Plaintiffs will suffer continual harassment along
with substantial emotional distress and abuse that will

annoy and alarm their household if the Defendants are permitted to continue to engage in their questionable practices, if Permanent Injunctive Relief is not granted. 74. Accordingly, Plaintiffs have a cause of action against the Defendant and hereby seeks relief under the TCPA's Strict Liability statutory damage award as well as Permanent Injunctive Relief pursuant to the foregoing, against the Defendant.

## XII. COUNT ONE
## VIOLATIONS OF 47 U.S.C. §227 (b)(1)(B)

75. Plaintiffs repeat, re-allege and incorporate by reference Paragraphs one through seventy-four as if set forth in full at length.

76. The Defendants violated the provisions of 47 U.S.C. §227(b)(1)(B), by the unlawful use of an automated telephone dialing and announcement device under its employment, direction and/or control. The Defendants knowingly used such device which caused the initiation of repeated auto-dialed calls, prerecorded announcements and abandoned calls, along with improper Caller ID, to the Plaintiffs homes, in which case such calls subsequently became harassing, alarming and seriously annoying to both Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

Award Plaintiff RZ strict liability statutory damages of $500 for each of the three (3) unlawful calls material to Count One for a total of $1,500. Award Plaintiff NZ strict liability statutory damages of $500 for each of the seven (7) unlawful calls material to Count One for a total of $3,500.

## XIII. COUNT TWO
## PROTECTION OF SUBSCRIBER PRIVACY RIGHTS
## VIOLATIONS OF 47 U.S.C. §227(c)

77. Plaintiffs repeat, re-allege and incorporate by reference Paragraphs one through seventy-six as if set forth in full at length.

78. On the date and times set forth herein, Plaintiffs received and answered their residential telephone lines hearing prerecorded telemarketing calls from the Defendants describing home remodeling services.

79. The defendants initiated those calls and solicited Plaintiffs in violation of their privacy rights. Id.

80. Plaintiffs' residential phone numbers are registered on the Federal and State no-call-list since inception.

81. Each of the Defendants calls were initiated for telemarketing purposes and violated the restrictions and proscriptions of both Plaintiffs no-call registration.

82. Upon information and belief, the Defendants did not register and /or purchase a do-not-call list from the

FTC or the New Jersey Division of Consumer Affairs.[N.J.S.A. §§56:8-121(a)(&(b)]

83. The Defendants and each of them knowingly provided factually incorrect caller ID information including false information in the recordings that they were located in New Jersey, such that they were calling from New Jersey, when in fact they were calling from Nebraska.

84. The defendants' repeated calls gives rise to a cause of action against each of them under authority of 47 U.S.C. §227(c)(5) as well as the Regulations promulgated thereunder, for soliciting phone numbers on the no-call registry.

85. The defendants foregoing conduct by each of them, initiating prohibited calls, constitutes separate violations of the TCPA, 47 U.S.C.§227(c) and the Regulations promulgated thereunder, 47 C.F.R.§64.1200(c)(2)(C).

WHEREFORE, Plaintiffs' demand judgment against Defendants as follows:

Award Plaintiff 'RZ' strict liability statutory damages of $500.00 for each of the 3 violations material to Count Two, for a total of $1,500.

Award Plaintiff 'NZ' strict liability statutory damages of $500.00 for each of the 7 violations material to Count Two, for a total of $3,500.

## XIV. COUNT THREE
## Award for Statutory Trebled Damages
## For Willful or Knowing Violations of
## the TCPA, 47 U.S.C. §227(b)(3)(C)

86. Plaintiffs' hereby incorporate all of the allegations of paragraphs one through eighty-five as if set forth in full at length.

87. Plaintiffs' blanket notification not to receive any telemarketing calls were made by their registration with the Federal and State no-call-list at inception of the registry in 2003 & 2004 (respectively). Id.

88. The Defendants knowingly or willfully violated the TCPA as well as the New Jersey no-call-law when they used an ADAD, called and solicited Plaintiffs on the dates set forth herein; intentionally used a carefully orchestrated prerecorded sales script to solicit plaintiffs for the defendants services.

89. The defendants and each of them, knowingly participated in the acts and practices alleged herein.

90. On the dates set forth herein, the defendant(s) knowingly or willfully used an affirmative act in an unconscionable commercial practice of deception, fraud, false pretense, false promise and misrepresentation in connection with the initiation of their telemarketing solicitations.

91. The defendant's affirmative act was a prevarication, willfully failing to mention they were not contractors,

willfully misleading the call recipients into believing they were New Jersey contractors, but rather in the business of simply harvesting homeowner leads that would be sold at a later date.

92.   On the dates set forth above, the defendants knowingly solicited into New Jersey while not registered with the Department of Law and Public Safety, New Jersey Division of Consumer Affairs. [N.J.S.A.§§56:8-121(a)(&(b)]

93.   On the dates set forth herein, the Defendants knowingly or willfully initiated calls to both Plaintiffs with their intent to solicit them for a service, using deception and false pretense, knowing they would be calling numbers on the federal and state no-call-list since inception but chose to call them anyway, which they did.

94.   The defendants foregoing acts or practices as set forth above, were known, directed, accepted and approved prior to implementation by the Defendants and each of them in their capacity as owner[s], director[s], attorneys, marketers, call centers, platform providers, common carriers, managing member[s] or through Agency for each of the other defendants.

95.   The Communications Act of 1934, 47 U.S.C. §312 (f)(1) (of which the TCPA is a part) does not impose a mental state requirement in that it defines willful conduct as "the conscious or deliberate commission or

omission of such act, irrespective of any intent to violate any provision, rule or regulation."

96.    The defendants knew or should have known their intentions to solicit plaintiffs by telephone would violate the TCPA as well as New Jersey's no-call law, but they chose to initiate their unlawful calls and solicited Plaintiffs anyway.

97.    The Defendants and each of them knowingly or willfully violated 47 U.S.C.§227(b)(1)(B) which provides by statute, entitling Plaintiffs to treble damages, up to $1,500.00 for each and every violation of Count One.

98.    The Defendants knowingly or willfully violated 47 U.S.C.§227(c) which provides by statute, entitling Plaintiffs to receive treble damages; equal to not more than three times the amount available under 47 U.S.C.§227(c)(5)(B), for an award of $1,500.00, for each and every violation of Count Two.

99.    Accordingly, the willful intent to violate the TCPA, having direct knowledge of its prohibited acts, makes each of the Defendants collectively and vicariously liable thereunder for treble the $500 strict statutory liability damage amount for 'each' call in Counts One and Two, to an award of $3,000.00 per violation as per Count Three 47 U.S.C. §§227(b)(3)(B) and (C).

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

Award Plaintiff RZ strict liability statutory trebled damages of $3000.00 for each of the (three) 3 call violations material to Counts One and Two for a total of $9000.00. ($3000 X 3 calls = $9000

Award Plaintiff NZ strict liability statutory trebled damages of $3000.00 for each of the (seven) 7 call violations material to Counts One and Two for a total of $21,000.00. ($3000 X 7 calls = $21000

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

        (a) Award Plaintiffs statutory and actual damages for the series of subject calls material to Count One.

        (b) Award Plaintiffs statutory and actual damages for the series of subject calls material to Count Two.

        (c) Award Plaintiffs statutory and trebled damages for the series of unlawful calls material to Count Three

        (d) Award Plaintiffs, if applicable, the cost of this litigation pursuant to N.J.S.A. §56:8-19

DOCKET NO.: BER-L-002795-16

(e) Award Plaintiffs attorney fees if applicable, pursuant to <u>N.J.S.A.</u> §56:8-19 *et seq*

(f) Award both Plaintiffs Permanent Injunctive Relief pursuant to 47 <u>U.S.C.</u> §227(b)(3)(A)

(g) Award Plaintiffs any Other Equitable Relief the Court deems justified to stop the aggravated harassment defined and described herein.

(h) Plaintiffs reserve the right to supplement and or amend this complaint in the event additional violations surface through continuing discovery.

Respectfully submitted,

By: _____
RICHARD M. ZELMA, *pro se*          Dated: March 29, 2016

By: _____
NICOLE ZELMA, *pro se*          Dated: March 29, 2016

## RULE 4:5-1 CERTIFICATION

Pursuant to the requirements of R. 4:5-1, I / we certify that the matter in controversy is not the subject of any other Court or Arbitration proceeding, nor is any other Court or Arbitration proceeding contemplated. No other parties should be joined in this action.

By: _____
RICHARD M. ZELMA, *pro se*      Dated: March 29, 2016

By: _____
NICOLE ZELMA, *pro se*      Dated: March 29, 2016

## NOTICE TO ATTORNEY GENERAL
## FOR THE STATE OF NEW JERSEY

NOTICE IS HEREBY GIVEN to the Office of Attorney General for the State of New Jersey pursuant to *N.J.S.A. §56:8-20* of the within claim based upon violations of the Consumer Fraud Act and the New Jersey no-call law.

I / we hereby certify that contemporaneous with the filing hereof, a copy of this pleading has been mailed to the aforesaid Office of Attorney General for the State of New Jersey at the New Jersey State Division of Law, Hughes Justice Complex, 25 W. Market St., P.O. Box 112, Trenton, NJ 08625-0112.

_____
RICHARD M. ZELMA, *pro se*      Dated: March 29, 2016
PLAINTIFF

_____
NICOLE ZELMA, *pro se*      Dated: March 29, 2016
PLAINTIFF

Signed on the dates set forth herein
Norwood, NJ 07648

E
X
H
I
B
I
T

EXHIBIT - 1

mpliance Solutions

# mplifying Compliance For The
# lodern Contact Center.



## Streamline the complex tasks of TCPA and DNC compliance.

Telemarketers, service providers and call centers of any type today regularly struggle with the challenges of regulatory compliance. In addition to our excellent SIP service offerings, Voxtelesys further supports the needs of modern contact centers with robust tools aimed at simplifying and streamlining the complex tasks of modern TCPA and DNC compliance.

ompliance solutions:

Vox CNI | TCPA Compliance Solutions (http://voxtelesys.com/vox-cni-tcpa-solutions/#info)

# Vox CNI | TCPA Compliance For Contact Centers

Don't risk the high fines or penalties now in place for operating outside TCPA compliance, by unknowingly calling mobile and wireless customers without the express written consent required by the FCC.

With Vox CNI (Cellular Number Identification), you can easily scrub your lists in real time, generate reports to audit and verify compliance, and even ntegrate your CNI-related TCPA compliance tasks directly with your dialer platform on the fly.

This highly flexible, modular TCPA compliance engine is designed with maximum customizability in mind, and is available for all carriers, dialer rendors and call center configurations. So don't take unnecessary risks with your call center compliance – contact Vox[...] ou how Vox CNI can keep your calls safe and your call center productive.

EXHIBIT

/



http://voxtelesys.com/dialer-termination/#info)

## SIP Dialer Termination (http://voxtelesys.com/dialer-termination/#info)

Reliable, competitively priced dialer termination, designed to avoid network infrastructure overload caused by excessive dialer traffic.

http://voxtelesys.com/custom-reporting/#info)

## Detailed Call Analytics (http://voxtelesys.com/custom-reporting/#info)



## Vox CNI + SpitFire Dialer

Vox CNI | Spitfire integrates directly with your dialer and keeps your contact center compliant in real-time while you dial. Now it's easier than ever to meet TCPA regulations. Stop risking hefty FCC fines and comply with TCPA regulations on-the-fly with Vox CNI.



http://voxtelesys.com/contact-voxtelesys/)

## SpitFire Dialers

We have partnered with OPC Marketing to integrate our compliance services into the popular SpitFire Dialer. Get a SpitFire Dialer combined with our SIP and Compliance solutions and increase your call center effectiveness.



http://www.spitfiredialers.com)

Look more closely into the patterns of your telecommunications usage with our suite of data analysis tools like billing reports and custom call record reporting.

http://voxtelesys.com/for-contact-centers/)



## Call Center Integration (http://voxtelesys.com/for-contact-centers/)

Every SIP call connects, every time – and for call centers, we can offer so much more. Integrate with our robust call reporting, compliance and tracking solutions.

Get Better Quality. Get Better Service.

 voxtelesys (/)

**OUR SERVICES**

📢 Voice Services
(http://voxtelesys.com/dialer-termination/)
🔀 Call Routing
(http://voxtelesys.com/georouting/)
📊 Data Services
(http://voxtelesys.com/custom-reporting/)
📦 Compliance
(http://voxtelesys.com/vox-dnc-do-not-call-solutions/)

**INDUSTRIES WE SERVE**

📞 Contact Centers
(http://voxtelesys.com/for-contact-centers/)
🖧 IT Integrators
(http://voxtelesys.com/for-it-integrators/)
🏥 Healthcare
(http://voxtelesys.com/for-healthcare/)
🏦 Financial
(http://voxtelesys.com/for-financial-services/)
⚙ Platform Providers
(http://voxtelesys.com/for-platform-providers/)

©2016 VoxTelesys LLC. All Rights Reserved.

EXHIBIT

EXHIBIT - 2

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 | ) ) )   CG Docket No. 02-278 |
| Petition of Club Texting, Inc. for Declaratory Ruling | ) ) ) |

**ORDER**

**Adopted: January 11, 2016**     **Released: January 11, 2016**

By the Acting Chief, Consumer and Governmental Affairs Bureau:

## I. INTRODUCTION

1. Robocalls[1] to wireless telephone numbers and other specified numbers are prohibited except when made for an emergency purpose, with the prior express consent of the called party, or pursuant to a Commission-granted exemption.[2] Congress identified calls to such numbers as susceptible to the harms associated with the use of automated dialing technologies, which can generate large numbers of calls in a short period of time. Pursuant to Congress' mandate in the Telephone Consumer Protection Act (TCPA), the Commission has for over two decades protected wireless consumers from harassing, intrusive, and unwanted robocalls by adopting and enforcing rules that implement the protections afforded to wireless consumers under the TCPA. The Commission has concluded that this protection encompasses both voice and text calls, including short message service (SMS) calls and text calls made using Internet-to-phone technology or an interconnected text provider.[3]

---

[1] The Commission has used the term "robocalls" to refer both to calls placed using an automatic telephone dialing system and to prerecorded or artificial voice calls. See, e.g., Rules and Regulations Implementing the Telephone Consumer Protection Act, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, para. 1 (2012). Because this Order addresses only text messages and not prerecorded or artificial voice calls, the term "robocall" as used herein refers primarily to text messages sent by "automatic telephone dialing systems" or "autodialers" as defined in the TCPA. See 47 U.S.C. § 227(a)(1).

[2] See 47 U.S.C. § 227(b)(1), (b)(2)(C); 47 CFR § 64.1200(a)(1).

[3] See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 at 14115, para. 165 (2003) (2003 TCPA Order); see also Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call"); Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, 30 FCC Rcd 7961, 8017, para. 108.



EXHIBIT
2

2.    In this Order, we deny a petition seeking a declaratory ruling that text broadcasters[4] should be subject to the same liability standard as fax broadcasters[5] when providing a text messaging service on behalf of third-party clients.[6] In denying this request, we note that since the filing of Club Texting's petition the Commission has adopted a "totality of the circumstances" test to determine liability for robocalls, including autodialed text messages.[7] That ruling by the Commission effectively resolves the issue raised in the Petition.

## II.    BACKGROUND

### A.    The Telephone Consumer Protection Act and the Commission's Implementing Rules

3.    In 1991, Congress enacted the TCPA to protect consumers from unwanted calls and faxes.[8] In relevant part, section 227(b)(1)(A) of the Act prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system" to certain categories of protected telephone numbers.[9] Specifically, this provision prohibits the use of autodialers or artificial or prerecorded voice messages for calling, among others, telephone numbers assigned to cellular services.[10] In so doing, Congress recognized the potential costs and privacy risks imposed on wireless consumers from the use of autodialing equipment, which can generate large numbers of unwanted calls.[11]

4.    In 1992, the Commission adopted rules implementing the TCPA, including a prohibition on using autodialers to make any telephone call (other than a call made for emergency purposes or with the prior express consent of the called party) to any number assigned to a wireless service.[12] In addition, based on a separate provision of section 227, the Commission's rules prohibit the use of any telephone fax machine, computer, or other device to send an unsolicited ad to a telephone fax machine.[13] The rules

---

[4] As used herein, a "text broadcaster" is a person or entity that transmits text messages to mobile telephones on behalf of another person or entity for a fee.

[5] A "fax broadcaster" is a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee." *See* 47 CFR § 64.1200(f)(7).

[6] *See Petition of Club Texting, Inc. for Declaratory Ruling*, CG Docket No. 02-278 (filed Aug. 25, 2009) (Petition). Under the Commission's rules, a fax broadcaster will not be held liable for violations of the TCPA's prohibitions against unsolicited fax ads unless the broadcaster demonstrates "a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions." *See* 47 CFR § 64.1200(a)(4)(vii).

[7] *TCPA Omnibus Declaratory Ruling and Order*, 30 FCC Rcd at 7980, para. 30.

[8] The TCPA is codified at 47 U.S.C. § 227.

[9] 47 U.S.C. § 227(b)(1)(A). In relevant part, section 227(b)(1)(A)(iii) prohibits non-emergency robocalls "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call" without prior express consent.

[10] *Id.; see also* 47 CFR § 64.1200(a)(1). An "automatic telephone dialing system" is "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

[11] *See, e.g.*, 137 Cong. Rec. H11307 (Daily Ed. Nov. 26, 1991) (noting that telephone subscribers found automated calls to be a particular nuisance and an invasion of privacy).

[12] *See* 47 CFR § 64.1200(a)(1)(iii); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752 (1992) (*1992 TCPA Order*).

[13] *See* 47 CFR § 64.1200(a)(4). This rule implements section 227(b)(1)(C) of the Act.

further provide that a fax broadcaster will be liable for violations of this rule only "if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions"[14]

## B.   Club Texting Petition

5.      Club Texting has filed a petition for declaratory ruling asking the Commission to clarify that, consistent with treatment of fax broadcasters, text broadcasters are not "senders" of text messages under section 227(b)(1) of the TCPA.[15] Rather, Club Texting argues that text broadcasters act as a "conduit operating a platform that enables message delivery."[16] Club Texting indicates that it provides "a self-service text message marketing service by licensing its clients to use a software platform that they can use to contact their target audience via text message."[17] Club Texting contends that aside from "the technological characteristics of the medium with which they work, companies like Club Texting are in all material respects identical to fax broadcasters."[18] As a result, Club Texting requests that text broadcasters be subject to the same standard as fax broadcasters with respect to liability for unsolicited messages when they provide text messaging service on behalf of their clients.[19] Specifically, Club Texting requests clarification that liability will attach only if a text broadcaster "demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such transmissions."[20] Club Texting suggests that clarifying that text broadcasters are not senders for TCPA purposes would promote compliance by imposing liability upon its third-party clients who, Club Texting opines, are in the best position to ensure that recipients have consented to receive the text messages.[21]

6.      The Commission sought public comment on the issues raised in the Petition.[22] The majority of commenters oppose granting the requested declaratory ruling.[23] Several of these commenters argue that granting the Petition would encourage violation of the TCPA because it limits primary responsibility for unsolicited text messages to third-party clients of text broadcasters whose identities are often difficult to determine.[24] One commenter notes, for example, that unlike the situation with

---

[14] *See* 47 CFR § 64.1200(a)(4)(vii).

[15] *See supra* n.5. Section 227(b)(1) of the TCPA is incorporated in the Commission's rules at 47 CFR § 64.1200(a)(1).

[16] Petition at 4.

[17] *Id.* at 2.

[18] *Id.* at 8.

[19] *Id.* at 9.

[20] *Id.* (citing 47 CFR § 64.1200(a)(4)(vii)).

[21] *Id.* at 9.

[22] *See Consumer and Governmental Affairs Bureau Seeks Comment on Club Texting's Petition for Declaratory Ruling*, CG Docket No. 02-278, Public Notice, 24 FCC Rcd 13635 (CGB 2009).

[23] *See* Robert Biggerstaff Reply Comments; Jay Connor Reply Comments; Paul D.S. Edwards Reply Comments; James Goodluck Reply Comments; Gerald Roylance Reply Comments; Joe Shields Reply Comments

[24] *See* Robert Biggerstaff Reply Comments at 2 ("text messages are much more prone to abuse, as the perpetrator can be impossible to identify"); Jay Connor at 1 (granting the fax broadcaster standard would make "it almost impossible for consumers to identify the responsible party"); Paul D.S Edwards Reply Comments at 2 (granting the Petition will "allow Club Texting, similarly situated persons, and similar entities to circumvent the TCPA and engage in illegal activity"); Gerald Roylance Reply Comments at 5 ("[t]he FCC should not make it easy for broadcasters to profit while their clients break the law and anonymously avoid prosecution"); Joe Shields Reply Comments at 2 ("the Commission should consider imposing strict identification rules so that the recipients of text message blasts will know who sent the text message and on whose behalf it was sent").

unsolicited faxes, neither the TCPA nor the Commission's rules require an opt-out notice or any sender identification on autodialed text messages.[25] As a result, these parties argue that if the text broadcaster cannot be held liable under the fax broadcaster standard, then wireless consumers will be left with no ability to enforce the TCPA's safeguards against any responsible party.[26] One commenter argues that text broadcasters are in the best position to ensure that the client is operating within the law by contractually securing indemnification from the client where claims are made that the client did not have prior permission to send the text message.[27] This commenter also notes that there are important legal and technical differences between robocalled text messages and fax ads that militate against granting of the request.[28] In addition, several commenters reference the higher protections afforded to wireless numbers under the TCPA along with the potential abuses that the use of autodialers can impose on wireless consumers from the receipt of potentially unlimited numbers of calls and messages that can be made with such technologies.[29] One commenter, SoundBite, supports the Petition, reiterating many of the arguments made by Club Texting that it contends warrant similar regulatory treatment for text and fax broadcasters.[30]

## III. DISCUSSION

7. We deny the petition seeking a declaratory ruling that text broadcasters should be subject to the same liability standard as fax broadcasters when providing a text messaging service on behalf of third-party clients. In light of a Commission decision made after Club Texting filed its request, we conclude that text broadcasters can be liable for TCPA violations based on the factors discussed in that decision. Specifically, in the *2015 TCPA Omnibus Declaratory Ruling and Order*, the Commission clarified who is liable for calls, including text messages, made in violation of the TCPA.[31] In so doing, the Commission stated:

> Specifically, a "direct connection between a person or entity and the making of a call" can include "tak[ing] the steps necessary to physically place a telephone call." It also can include being "so involved in the placing of a specific telephone call" as to be deemed to have initiated it. Thus, we look to the *totality of the facts and circumstances surrounding the placing of a particular call* to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA. ... Similarly, whether a person who offers a calling platform service for the

---

[25] *See* Robert Biggerstaff Reply Comments at 2 (also noting the size and character limitations on text messages); *see also* Letter from Scott A. Delacourt, Counsel to Club Texting, to Marlene Dortch, FCC, CG Docket No. 02-278 (dated Dec. 23, 2009) (suggesting that providing contact information on a text message would be "technologically infeasible") (Club Texting Dec. 23 *ex parte*).

[26] *See, e.g.*, Robert Biggerstaff Reply Comments at 3 (also contending that many text broadcasters will not cooperate or divulge any information about the client, or the information provided is false and untraceable); Jay Connor Reply Comments at 1; James Goodluck Reply Comments at 1; Gerald Roylance Reply Comments at 4.

[27] *See* Robert Biggerstaff Reply Comments at 7.

[28] *See, e.g.*, Robert Biggerstaff Reply Comments at 2-3 (noting that SMS text messages have "limited size, and contain only text. No ID requirements in the TCPA. No 'opt-out' notice requirements in TCPA. No call detail records maintained by carriers" while faxes have "virtually unlimited size with text and images. Explicit ID requirements in the TCPA. Explicit 'opt-out' requirements in TCPA. Call detail records maintained by carriers."

[29] *See, e.g.*, Robert Biggerstaff Reply Comments at 3-4; Paul D.S. Edwards Reply Comments at 1-2; Joe Shields Reply Comments at 1

[30] *See* SoundBite Comments at 2-3.

[31] *TCPA Omnibus Declaratory Ruling and Order*, 30 FCC Rcd at 7978-80, paras. 25-30.

4

use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them.[32]

8.      As a result, the Commission has concluded that the determination as to who is liable as the person who "makes" or "initiates" a particular robocall (including an autodialed text message) requires a fact-based determination governed by factors such as which party takes the "steps necessary to physically place" that call and the extent and nature of involvement by others, including the provider of the calling platform used to make that call. Therefore, we confirm that this Commission precedent is the applicable standard for determining text broadcaster liability for TCPA violations. Because the Commission has clarified the standard to be applied to text broadcasters and that standard is not the same standard as applies to fax broadcasters, we deny Club Texting's request for a determination that text broadcasters are subject to the fax broadcaster standard. In addition, we note that the record in this matter is insufficient to make such a fact-specific determination as to any specific text broadcaster.

## IV.   ORDERING CLAUSES

9.      Accordingly, IT IS ORDERED, pursuant to sections 1-4, and 227 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227, sections 1.2 and 64.1200 of the Commission's rules, 47 CFR §§ 1.2, 64.1200, and the authority delegated in sections 0.141 and 0.361 of the rules, 47 CFR §§ 0.141, 0.361, that the Petition for Declaratory Ruling filed by Club Texting, Inc. in CG Docket No. 02-278 on August 25, 2009, IS DENIED.

FEDERAL COMMUNICATIONS COMMISSION

Alison Kutler
Acting Chief
Consumer and Governmental Affairs Bureau

---

[32] *Id.* at 7980-81, para. 30 (internal citations omitted) (emphasis added).

## APPENDIX

### List of Commenters

The following parties have filed comments in response to the Public Notice issued in this matter (CG Docket No. 02-278):

| Commenter | Abbreviation |
|---|---|
| Robert Biggerstaff | Robert Biggerstaff |
| Club Texting, Inc. | Club Texting |
| Jay Connor | Jay Connor |
| Paul D.S. Edwards | Paul D.S. Edwards |
| James Goodluck | James Goodluck |
| Gerald Roylance | Gerald Roylance |
| Joe Shields | Joe Shields |
| SoundBite Communications, Inc. | SoundBite |

E
X
H
I
B
I
<u>T</u>

EXHIBIT - 3

RICHARD M. ZELMA*
940 BLANCH AVENUE
NORWOOD, NEW JERSEY 07648


TELEPHONE 201-767-8153
TELECOPIER: FOR COURT USE ONLY
EMAIL: TCPALAW@OPTONLINE.NET

° LIFETIME MEMBER: TELECOM PIONEERS OF AMERICA
° LIFETIME MEMBER: COMMUNICATION WORKERS OF AMERICA
° BELL SYSTEM CERTIFIED – C.O. CALL-TRACE FORENSICS TECHNICIAN
° NJ GOVERNMENT & PR SPOKESPERSON FOR PRIVATE CITIZEN, INC.
° TCPA MENTORING & CONSULTATION

December 19, 2015
*VIA ELECTRONIC MAIL*

Jovan Wayne Lausterer, Esq.
Bromm, Lindahl, Freeman-Caddy & Lausterer
551 North Linden
Wahoo, NE 68066

   RE: Chief Executive Officer: Patrick Burke; Chairman: Bruce Burke;
        Computer Telephony Innovations, Inc. FCC # 827574
                    a/k/a, d/b/a Voxtelesys

Dear Mr. Lausterer:

With respect to your recent request that I provide you the basis for
any claims against your above cited clients; as set forth below, kindly
find a brief summary for a cause of action/private right of action for
myself as well as my son, along with the appropriate action to be taken
via complaint (to be copied) to both the FCC/ FTC as well as the
Department of Law and Public Safety for the State of New Jersey.

The Burkes' organization is technically defined as a 'platform' which
provides call center services. The Burke website describes their
organization in relevant part as a call center.

When the TCPA was implemented in 1991, it was a requirement that any
call center that engages in the initiation of telemarketing calls to a
residential line have procedures in place to prevent unwanted calls to
those who don't want them. (47 CFR §64.1200)

The TCPA is codified under 47 USC §227 *et seq.* Within these two
statutes, one can find where your client has gone astray of every legal
requirement.

Moreover, when asked (of Bruce Burke) how or where he complied with the
federal law requirements, he had no clue as to what I was referencing.
Although his website is replete with references to TCPA compliance,
regretfully, he has no clue as to what they are.



EXHIBIT

3-A

It is not my position or desire to educate your client on the rules and regulations which govern his choice of business. That is the responsibility for his legal advisors.

Furthermore, your client is presumed liable as the 'platform provider' in this consortium and since no other culpable entity has been identified, the Burkes can look forward to significant liability. (See; DECLARATORY RULING AND ORDER; FCC Docket 15-72; Released: July 10, 2015, para. 30-31)

In relevant part;
Calls were willfully or knowingly initiated to phone numbers on both the federal and state no call list.
The calls were initiated using an automatic dialing device.
The calls did not provide a name of the calling party as a business registered with the Secretary of State in which the caller is licensed to do business. In fact, the Caller ID name field was blank.
The caller did not provide a means to stop the repeated calls.
The caller repeated the unlawful calls seven times to my son's number.
Your client has/had no procedures in place to stop the unwanted calls.
Mr. Burke unlawfully shared my sons number with a third party in violation of 47 CFR §64.1200 (d)(3).

Violations: Under federal law, my son and I have a (separate) private Right of Action;
47 U.S.C.§227(c): initiating calls to a number on the no-call-list;
47 U.S.C.§227(b)(1)(A): initiating telemarketing calls using an automated dialing device;
47 U.S.C.§227(b)(3)(C):Willful or Knowing Violations of the TCPA, Trebled damage award.
N.J.S.A.§56:8-119: Initiating calls to numbers on the New Jersey no-call-list.

In sum, between the TCPA and New Jerseys no call violations, codified at N.J.S.A.§56:8-19, the client has exposure to my son for violation at $6000 per call. ($1500 federal and $4500, NJ.) There were seven calls to my son's home.

This does not take into consideration that under this area of law, your client has additional exposure to various agencies for violations where they each have their own cause of action. And, I am compelled to notify the appropriate agencies of Mr. Burke's wrongdoing. (As example: See N.J.S.A.§56:8-20)

New Jersey court rules as with most jurisdictions require parties to entertain settlement in lieu of the cost and expense of time consuming litigation. Alternatively, I will forgo the one or two call violations to my own home along with vacating notification to the applicable agencies if the client

has interest in settlement with my son. I have been asked to act as their agent.

Lastly: the subpoena. If you deem the recent subpoena defective, I have no argument. As previously notified, it has been withdrawn, thereby having no further force or effect in this matter.

I sincerely hope my reiteration set forth above evaporates any concern or confusion as to what action we can take as Plaintiffs. My son will be taking his family away for the holidays. If your client has interest in settlement at this juncture, I strongly encourage you to discuss the foregoing matter with them, and if interested, I would implore they move expeditiously as my son has very little patience.

One point of concern however; you are not admitted in New Jersey. Ethically we cannot get into the depths of proposed litigation. If the client feels the need to argue this beyond the realm of settlement, then I would suggest you seek local counsel to contact me.

Thank you for your continued courtesy, understanding and anticipated cooperation in this matter.

Very truly yours,

/s/ Richard M. Zelma

Richard M. Zelma, pro se

cc: Nicole Zelma/ Shannon Zelma

EXHIBIT 3

RICHARD M. ZELMA*
940 BLANCH AVENUE
NORWOOD, NEW JERSEY 07648

TELEPHONE 201-767-8153
TELECOPIER: FOR COURT USE ONLY
EMAIL: TCPALAW@OPTONLINE.NET

* LIFETIME MEMBER: TELECOM PIONEERS OF AMERICA
* LIFETIME MEMBER: COMMUNICATION WORKERS OF AMERICA
* BELL SYSTEM CERTIFIED – C.O. CALL-TRACE FORENSICS TECHNICIAN
* NJ GOVERNMENT & PR SPOKESPERSON FOR PRIVATE CITIZEN, INC.
* TCPA MENTORING & CONSULTATION

December 11, 2015
*VIA ELECTRONIC MAIL* Accounting@voxtelesys.com

Bruce Burke
Computer Telephony Innovations, Inc
1723 N. Walnut Street
Wahoo, NE 68066

### RE: Prohibited telemarketing calls

Dear Mr. Burke:

You are being informed that calls initiated by your organization to a residential telephone landline, [201] 439 0563, peddling some home improvement deal, violated Federal and State Telemarketing laws: [47 U.S.C. §227 *et seg*; 47 C.F.R. §64.1200, §64.1601, 16 C.F.R. §310 and N.J.S.A. §56:8-119].

Since August of this year, your calls were identified by Caller ID from target number; [201] 639 3690. The below data is just a sampling of the captured calls dates and times.

8/31-8:10 pm; 9/5-11:53 am; 9/12-11:01 am; 9/25-7:10 pm; 10/8-9:29 am; 10/14-9:24 am and 10/31-9:08 am. There were significantly more calls that will be identified through continued discovery.

If you believe you are not liable in any way by profiting in whole or in part from these subject calls, kindly advise the undersigned immediately. You may either call my main number [201] 767 8153 or email me at the above address.

Thank you

*/s/ Richard M. Zelma*

Richard M. Zelma

cc: Nicole Zelma



EXHIBIT

3-B